

**FILED & ENTERED**

MAR 17 2014

**CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gae        DEPUTY CLERK**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>KATHLEEN KELLOGG-TAXE,<br>    Debtor. | Case No.: 2:12-bk-51208-RN<br><br>Chapter 7<br><br>**MEMORANDUM OF DECISION REGARDING CHAPTER 7 TRUSTEE'S "MOTION FOR ORDER AUTHORIZING SALE OF REAL PROPERTY OF THE ESTATE [10535 Vestone Way, Los Angeles, California 90077] FREE AND CLEAR OF LIENS AND INTERESTS, SUBJECT TO HIGHER AND BETTER OFFERS, AND APPROVING OVERBIDDING PROCEDURES"** |

**I.   INTRODUCTION**

   This matter came before this Court on December 19, 2013, on a motion by the Chapter 7 Trustee, Carolyn A. Dye (the "Trustee"), for an order approving the sale of Kathleen Kellogg-Taxe's (the "Debtor") real property located at 10535 Vestone Way, Los Angeles,

California 90077 (the "Vestone Way Property") pursuant to 11 U.S.C. §§ 363(b)(1), (f), (h) and (m), subject to a higher and better offer, and approving overbid procedures (the "Sale Motion"). The Debtor; Richard Taxe, the Debtor's husband; and Kellspin, Inc., a Nevada corporation ("Kellspin, Inc."), one of the alleged secured creditors of the Vestone Way Property, opposed the sale. This memorandum of decision addresses the Sale Motion based on the pleadings, evidentiary record, and arguments of counsel.[1]

**II.   BACKGROUND**

On December 18, 2012, the Debtor filed her voluntary chapter 11 petition. See Docket No. 1. This was the Debtor's fifth bankruptcy filing. The Debtor had commenced four prior chapter 13 cases, all of which were dismissed shortly after they were filed. Three of the four prior bankruptcies were filed and dismissed within the year prior to the commencement of this case.[2]

After filing this case, the Debtor failed to timely file any schedules and other required documents. The Court scheduled a status conference for January 22, 2013. See Docket No. 11. No appearance was made by or on behalf of the Debtor at the status conference. On January 24, 2013, the Court entered its "Order

---

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330. "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P."). "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

[2] The Debtor's four prior bankruptcy filings include:

| Case No. | Date Filed | Date Dismissed |
|---|---|---|
| 2:09-bk-29787-EC | July 30, 2009 | October 16, 2009 |
| 2:12-bk-33767-NB | July 10, 2012 | August 20, 2012 |
| 2:12-bk-40808-SK | September 10, 2012 | October 1, 2012 |
| 2:12-bk-44947-WB | October 17, 2012 | November 29, 2012 |

1  Converting Case to a Case Under Chapter 7." See Docket No. 18.
2  Thereafter Chapter 7 Trustee (the " was appointed on or about
3  January 29, 2013. See Docket No. 20.
4     On February 20, 2013, the Trustee filed a "Notice of [the]
5  Trustee's Intent to Administer Case and Request that the Clerk of
6  the Court Not Dismiss [the] Debtor's Case for Her Failure to Timely
7  File Her Schedules and Other Required Documents to Complete Her
8  Filing." See Docket No. 23. The Trustee sought such relief on the
9  following grounds: (i) the Debtor is a chronic filer; (ii) the
10 Trustee was investigating the Debtor's financial affairs; and (iii)
11 there may be potential equity in the Debtor's primary residence,
12 located at 10535 Vestone Way, Los Angeles, CA 90077 (the "Vestone
13 Way Property"). See id.
14     In light of there being no automatic stay pursuant to
15 § 362(c)(4)(A)(i) because of the Debtor's prior bankruptcy filings,
16 the Trustee sought to impose a stay under § 362(c)(4)(B). See
17 Docket No. 28. However, due to the untimeliness of the Trustee's
18 motion, and other cause appearing, the Court entered an "Order
19 Denying Motion in Individual Case for Order Imposing a Stay or
20 Continuing the Automatic Stay as the Court Deems Appropriate" on
21 April 25, 2013. See Docket No. 53. As a result, there is no stay
22 in the Debtor's pending chapter 7 case.
23     The Trustee then filed schedules in the Debtor's case on April
24 12, 2013 based on the Debtor's schedules that had been filed in her
25 previous bankruptcy cases and the Trustee's ongoing investigation.
26 See Docket Nos. 39-50. The Debtor then filed her own schedules as
27 amended through her counsel on May 13, 2013. See Docket Nos. 57-65.
28

- 3 -

Per the Claims Register, thirteen proofs of claim have been filed in this case, two of which have been withdrawn (Claim Nos. 3 and 4). One of the claims was disallowed by an Order of this Court as to the Debtor's separate property, subject to a motion being filed by the claimant to have the claim (Claim No. 9) against the Debtor's community property allowed. That motion has not yet been filed.[3] The Debtor's general unsecured claims as filed total $836,221.57 (Claim Nos. 2 and 10-13).[4] The United States Trustee also filed an administrative claim against the estate in the amount of $650.00 (Claim No. 5). The remaining proofs of claim were filed by the Debtor's alleged secured creditors whose claims are allegedly secured by liens against the Vestone Way Property (Claim Nos. 1 and 6-8). In addition, the Trustee and her counsel have indicated that they assert administrative claims for services rendered that so far total $235,646.00.[5]

---

[3] On February 27, 2014, the Court entered an "Order on [the] Debtor's Objection to Claim No. 9-1 of Daniel A. Seigel," the Claimant (the "Seigel Order"), in which the Court sustained the Debtor's objection "to the extent that the Claimant's Proof of Claim No. 9-1 (the 'Claim [No. 9]') is disallowed as a secured claim against the separate property of the Debtor." See Docket No. 264. The Court further ordered that "[t]he Claimant is not precluded from filing a motion to have the Claim allowed against any community property of this estate should there be community property that is collected and liquidated in the event of the entry of a renewal of the underlying judgment, nor does it preclude the Trustee from objecting to such a motion." See id. Per the Docket, the Claimant has not brought a motion to have Claim No. 9 allowed as against the Debtor's community property. Accordingly, pursuant to the Seigel Order, the Claimant currently does not have an allowed claim against the Debtor's separate or community property.

[4] The Trustee sought to extend the claims bar date for filing proofs of claim. See Docket No. 89. On January 30, 2013, a "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines" setting the deadline for filing proofs of claim at June 10, 2013 was filed. It was served on all creditors known to the Trustee at the time. See Docket Nos. 21–22. However, the Debtor's schedules as amended identified additional creditors. On October 18, 2013, the Court entered an Order denying the Trustee's request to extend the claims bar deadline. The Court found that the Trustee had failed to show that one of the five exceptions for extending the deadline under FRBP 3002(c) applied. The Court expressly noted that, "as provided for in 11 U.S.C. § 726(a)(2)(C), unsecured creditors who filed late claims will be paid at the same time as unsecured creditors who file[d] timely claims as long as (1) the creditors did not have 'notice or actual knowledge of the case' in time to file a timely claim and (2) proof of the claim is filed before distribution occurs." See Docket No. 136.

[5] The Trustee declares that she has spent "56.5 hours in connection with the Debtor's bankruptcy case [so far] and associated adversary proceedings." At her normal hourly rate of $450.00, the Trustee declares that her fees would total approximately $25,425.00. Trustee's Decl., ¶ 2 (attached to Opp'n of the Debtor's Dismissal Motion). The Trustee's

On October 18, 2013, the Court entered an Order granting the Trustee's application to employ Coldwell Banker as her real estate broker (the "Broker") to market and sell the Vestone Way Property. See Docket No. 135. On November 5, 2013, the Trustee filed the Sale Motion. The Sale Motion prompted the filing of the Debtor's motion to dismiss her case on an emergency basis (the "Dismissal Motion"). See Docket No. 182. The Sale Motion was initially scheduled to be heard on November 26, 2013, but was continued to December 19, 2013 to coincide with the hearing on the Debtor's Dismissal Motion. See Docket No. 196. The Sale Motion and Dismissal Motion were heard on December 19, 2013 and taken under submission. The Dismissal Motion was denied in a separate memorandum of decision, dated February 18, 2014. See Docket No. 256. The Sale Motion is addressed in this memorandum of decision.

The Vestone Way Property is comprised of four parcels, the largest of which is improved with an approximate 6,000 sq. ft. house, two of which are drive-way easements, and one of which is unimproved. Mot. at 3; Sahakian Decl., ¶ 8 (attached to Mot.). The Trustee and Debtor agree that the Property is the Debtor's separate property and not community property.[6]

---

counsel also submitted a declaration in which her counsel declares that, to date, it has incurred in excess of $210,221.00 in legal fees in this case. Trustee's Counsel's Decl., ¶ 2 (attached to Opp'n of the Debtor's Dismissal Motion).

[6] The Debtor and Richard Taxe were married in 1984. Dumas Decl., at Exh. A (p. 50, lns.11–15) (filed as Docket No. 152). In 1989, David and Rose Taxe, the parents of Richard Taxe, owned the Vestone Way Property as "joint tenants" and "husband and wife," and they transferred their interest in the Property by Grant Deed to the Debtor, as her separate property, and Richard Taxe's brother, Ronald Taxe, as his separate property. The Debtor and Ronald Taxe each received an "undivided one-half interest" in the Property. Mot. at 3; see JN Req., at Exhs. 2 & 3 (filed as Docket No. 153); see also Salvato Decl., at Exh. 4 (Grant Deed) (attached to the Debtor's Objection to Claim No. 9 filed as Docket No. 115). On May 25, 1998, Ronald Taxe transferred his ownership interest in the Property to the Debtor as "a married woman as her sole and separate property." See JN Req., at Exh. 4 (filed as Docket No. 153). Thus, without any evidence to the contrary, the Debtor appears to own the Property as her sole and separate property.

- 5 -

According to the Trustee, based on a "Covenant and Agreement to Hold Property as One Parcel" (the "Covenant"), recorded on September 26, 1983, the Property cannot be sold as separate parcels. See JN Req., at Exh. 6 (filed as Docket No. 153). The Covenant, which runs with the land, was signed and executed by David Taxe, Richard Taxe's father, as the former owner of the Property prior to the transfer of the Property to the Debtor. See id.; see also supra, at n.7.

Five Star Global Resources, LLC ("Five Star"), which is controlled by Bruce Taylor ("Taylor"), claims a 50% ownership interest in the unimproved parcel that is subject to the Covenant. Taylor Decl., ¶ 4 (attached to Mot.). Taylor declares that the transfer was intended as security for numerous loans, totaling $148,986.00, made by Taylor to Debtor and Richard Taxe between September 2011 through April 2012. Id., ¶¶ 3-4. On July 31, 2013, the Trustee commenced an adversary proceeding against Five Star and other parties to quiet title in the Property, entitled Carolyn A. Dye, Chapter 7 Trustee v. Kellspin, Inc. et al. (Case No. 2:13-ap-01781-RN) (the "Quiet Title Action"), which is currently pending before this Court.

On November 25, 2013, the Trustee and Five Star executed a stipulation in which the Trustee agreed to pay Five Star $35,000.00 from the sales proceeds of the Vestone Way Property "on account of its ownership interest." See Docket No. 179. In exchange, Five Star agreed to the sale of the Property free and clear of its ownership interest and any lien it may have in the Property. Id. The Trustee further agreed to dismiss her Quiet Title Action against Five Star with prejudice. Id. Counsel for the Trustee also filed a declaration attaching a "Settlement Agreement and Mutual Release"

(the "Settlement Agreement") reiterating the above terms. See Docket No. 180. The Settlement Agreement additionally provided that "Taylor shall have an unsecured general claim against the Estate in the amount of $113,986.00." Id. The Trustee agreed to submit a motion for approval of the compromise upon receipt of proof supporting Taylor's claim. Id.

The Trustee recently filed and served the compromise motion on February 20, 2014 pursuant to FRBP 9019 and LBR 9013-1(o). See Docket Nos. 258 & 259. On March 6, 2014, the Debtor and her husband Richard Taxe filed separate oppositions to the Trustee's compromise motion. See Docket Nos. 266 & 267. In light of Five Star's potential interest in the Property, and the pending compromise motion, the Trustee seeks approval of the sale pursuant to § 363(h).

Several liens encumber the Vestone Way Property. The Los Angeles County Tax Assessor holds two tax liens: the first for the year 2012-2013, in the amount of $8,507.38 (Claim No. 6-2, amended); and the second for the year 2013-2014, in an amount to be determined at the sale's closing. Astoria Federal Savings ("Astoria") holds a deed of trust in the amount of $1,209,118.91 (Claim No. 7-1).[7] These liens are undisputed, and the Trustee intends to pay them in full through an escrow to be opened to facilitate the closing of the

---

[7] Debtor was also able to obtain a $1 million loan from Astoria Bank in 2007, which the Bank understood to be secured by a first DOT in its favor, and a further $200,000 loan from Countrywide (now Bank of America) on July 29, 2007, which was presumably secured by a second DOT. Mot. at 4; Exh. D, at 12–13. Bank of America's loan has since been reconveyed as part of the bank's loan forgiveness program. Mot. at 4; Exh. D, at 13. When Astoria Bank became aware that Morrison was seeking to enforce its lien, Astoria intervened in a lawsuit between the Taxes and Morrison Management, obtaining a judgment establishing Astoria's priority. Mot. at 4; see also JN Req., Exh. 11, at 3. Astoria sought to foreclose on its secured interest in the Property following Debtor's default, but the Trustee alleges that Debtor's bankruptcy filings have frustrated the foreclosure process. Mot. at 5. After negotiations, the Trustee and Astoria stipulated that the Trustee would agree to the allowance of Astoria's claim in the amount of $1,209,118.91 through the date of the bankruptcy filing, and Astoria would forego recommencing its foreclosure procedure for at least four months. Mot. at 6–7; see Docket No. 71. The Stipulation was approved over the Debtor's objection by an order entered on August 9, 2013. See Docket No. 95.

sale. In addition, Morrison Management, S.A. ("Morrison") holds a lien in the amount of $3,830,158.68 (Claim No. 1-1). This lien originated in 1984, when a deed of trust was recorded to secure a purported loan of $750,000 to David and Rose Taxe, Richard Taxe's parents ("Euramex lien").[8]  See JN Req., at Ex. 9. Finally, Kellspin, Inc. ("Kellspin") holds a judgment lien in the amount of $1,519,696.94 (Claim No. 8-2).[9]  Morrison and Kellspin are also defendants in the Quiet Title Action discussed above.

The Trustee's terms of sale are summarized as follows:

| | |
|---|---|
| **Buyer** | John Levin and/or Assignee (subject to overbid) |
| **Purchase Price** | $2,500,000 on an "as is, where is" basis and not subject to any contingencies |
| **Deposit** | $75,000 (already paid into escrow) |
| **Broker's Commission** | $150,000 (6% of sales proceeds) (per Order approving application to employ Broker) (to be split equally between Trustee's Broker and Buyer's broker or any broker for the successful bidder) |
| **Closing costs** | $50,000 (estimated at 2%) |
| **Closing date** | Escrow scheduled to close within 14 days of the date on which the order is entered approving sale |
| **Failure to perform** | Deposit forfeited |
| **Court approval** | Required |

See Mot., Exhs. A (Counter-Offer) & B (Escrow Instructions).

---

[8] The beneficiary of the Euramex lien was Euramex Services, Ltd., a Nevada corporation. See JN Req., at Exh. 9 (filed as Docket No. 153). Morrison is the latest assignee of the Euramex Lien. See Claim No. 1, Declaration of Aleksandr Blyumkin, Exh. 16.

[9] Kellspin is a Nevada corporation whose registered entity address is Vestone Way Property address. Richard Taxe is the registered agent for service of process, and the agent's address is also the Vestone Way Property address. See JN Req., at Exh. 7. Kellspin's lien arises from a 1984 abstract of judgment in favor of an entity known as Omni Group and against David and Rose Taxe, Debtor's husband's parents. See JN Req., at Exh. 8, p. 3.

The Trustee also proposed the following overbid procedures:

| | |
|---|---|
| **Initial overbid** | $2,510,000 ($10,000 above present offer) |
| **Subsequent overbids** | Minimum increments of at least $5,000 |
| **Deposit** | $85,000 ($75,000 plus the initial overbid of $10,000) |
| **Failure to perform** | Deposit forfeited |
| **Deadline to overbid** | 48 hrs before Hearing Date (requires evidence of ability to perform) |
| **All Overbids** | On an "as is, where is" basis and not subject to any contingencies |
| **Closing Date** | Escrow scheduled to close within 14-days of the date on which the order is entered approving sale |
| **Back Up Bidder** | Trustee requests approval of Back-up Bidder |

See Mot. at 12–14.

Furthermore, the Trustee proposes the following treatment of the Debtor's homestead exemption.

- Trustee to pay $30,000 of buyer's $75,000 deposit to Debtor within 24 hours of entry of order approving sale;
- Debtor will have until January 3, 2013 to vacate the Property, but will be charged rent $750 per day which will be credited against the balance of the homestead;
- Any moving, cleaning, or repair expenses incurred by the Trustee, in addition to rent and forcible eviction costs, will be charged against Debtor's homestead exemption;[10] and

---

[10] Such surcharge may not be permitted in view of the Supreme Court's recent ruling in the case of Law v. Siegel, Case No. 12-5196, 2014 WL 813702 (U.S. Mar. 4, 2014).

1 • The balance of Debtor's homestead exemption shall be paid
2    once the occupants of the Property have vacated.
3 See Mot. at 11.

4    The Trustee estimates that, after deductions are made for the Brokers' commission (at 6%), closing costs, and Debtor's homestead exemption, as well as the LA County's Property Tax ($8,270.94) and Astoria Bank's lien, approximately $907,610.15 of the sales proceeds will remain (not accounting for the Los Angeles County property taxes for 2013-2014 which amount was currently unknown when this Motion was prepared). When Five Star's secured claim is paid, there will be less than $872,610.15 sales proceeds remaining for the estate. See Mot., Exh. D. As explained above, the secured interests of Morrison Management and Kellspin are currently disputed and are not included in the Trustee's calculations.[11] Neither are the 2013-2014 taxes.

**III. DISCUSSION**

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and 11 U.S.C. § 363. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

**A.  11 U.S.C. § 363(b)(1)**

The Trustee contends that the sale of the Vestone Way Property satisfies the requirements of § 363(b)(1). The Court agrees.

A trustee may sell property of the estate other than in the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b)(1). The requirements of § 363(b) are designed to protect

---

[11] However, if either or both the Morrison Management and Kellspin liens are found to be valid, there will be no equity left over in the estate.

- 10 -

creditors' interests in the assets of the estate. <u>In re 240 N. Brand Partners, Ltd.</u>, 200 B.R. 653, 659 (9th Cir. B.A.P. 1996). A bankruptcy court can authorize the sale of substantially all of the assets of the estate under § 363(b) upon a proper showing that the sale is in the best interests of the estate, that there is a sound business purpose for the sale, and that it was proposed in good faith. <u>See</u> <u>id.</u> at 659; <u>In re Wilde Horse Enters., Inc.</u>, 136 B.R. 830, 841 (Bankr. C.D. Cal 1991); <u>In re Lionel</u>, 722 F.2d 1063, 1070 (2nd Cir. 1983).

Here, the Court finds that the Trustee's sale is proposed in good faith for a sound business purpose and is in the best interests of the estate. The Trustee declares that she has marketed the Property at arms-length through her real estate broker in order to create a fund from which to pay general unsecured creditors and administrative expenses. Trustee Decl., ¶ 10. The Property was listed on the Multi-Regional Multiple Listing Service, on Coldwell Banker's website, Californiamoves.com and on Itech.com. <u>See</u> Sahakian Decl., ¶ 4. The Trustee further declares that the sale to Buyer and/or overbidder is the highest and best available price for the Property, and the proposed sale is an arms-length transaction. Trustee Decl., ¶ 5. In addition, if Morrison's and Kellspin's disputed liens are found to be invalid, the estate will reap significant proceeds from the sale of the Vestone Way Property.

In her Opposition, Debtor raises several arguments against selling the Vestone Way Property, none of which have merit.

First, Debtor argues that it would be unjust to sell the Property to satisfy Astoria's lien, even though Kellspin's lien has priority. Nevertheless, Debtor appears to concede that Kellspin's

1  lien is disputed by vigorously disputing the lien's validity and
2  priority in opposing the Trustee's Sale Motion.  Because Kellspin's
3  lien is the subject of a bona fide dispute, the Trustee may sell the
4  Vestone Way Property free and clear of Kellspin's lien.  See infra,
5  at III.B.

6  Second, Debtor contends that she has less than $37,000 in
7  general unsecured debts and an administrative claim by the United
8  States Trustee in the amount of $650 that can be paid off with the
9  sale of her other assets.  However, as the Court noted in denying
10 the Debtor's motion to dismiss her chapter 7 case, Debtor failed to
11 show "that she can raise sufficient funds to pay all her allowed
12 general unsecured creditors and administrative expenses prior to
13 dismissal."  Docket No. 256, at p. 7.

14 Third, with respect to Astoria's secured claim, Debtor asserts
15 that she will bring the loan current by selling off the small parcel
16 adjacent to the main parcel.  However, selling the small parcel does
17 not appear possible in light of the Covenant that runs with the
18 land.  See JN Req., at Ex. 6.  Debtor fails to provide any legal
19 argument or evidence challenging the validity of the recorded
20 Covenant.[12]

21 Fourth, Debtor argues that the Trustee has accepted a purchase
22 offer substantially below fair market value.  Debtor notes that the

---

[12] Debtor concedes that she is "not opposed to permitting Astoria to exercise its rights to foreclose on the parcels subject to its lien" (Debtor's Opp'n at 9); and that Kellspin, Inc., which she alleges is controlled by Ronald Taxe, is willing to wait until the Property is "voluntarily sold" (id. at 2, n.4).  Despite this concession, Debtor argues that Astoria's lien only attaches to one of the parcels, APN 4370-016-029, and she does not understand why the other parcels are being sold to satisfy Astoria's lien.  She argues that the adjacent parcel can be sold separately from the residence with a tax assessed value in excess of $250,000; however, per the Covenant neither parcel can be sold separately.  See JN Req., at Exh. 6. Furthermore, Debtor argues that "it is not clear that the agreement to which the Trustee has referred even applies to the fourth, unencumbered parcel."  Debtor's Opp'n at 9.  Debtor is incorrect.  The Covenant clearly provides the legal descriptions of the two parcels subject to the restriction on sale.  See JN Req., Exh. 6 at p. 2.

1  Property was initially listed at $2.85 million by the Trustee's
2  Broker.  Docket No. 93 at Exh. E of Applicant to Employ Broker.
3  Debtor argues that there is "no need to force a sale to resolve the
4  lender Astoria Federal Savings' problematic title issues [as Astoria
5  is not prejudiced by the delay and has not taken efforts to commence
6  foreclosure], or before the dispute among the competing senior liens
7  on the Property are resolved."  Debtor's Opp'n at 2-4.  However, the
8  Sale Motion is subject to overbid, and Debtor provides no persuasive
9  evidence that the proposed purchase price is below market value.
10     Fifth, Debtor argues that her case is fundamentally a two-party
11 dispute between her and Morrison.  Debtor's Opp'n at 5.  Debtor
12 notes that she has objected to Morrison's proof of claim, arguing
13 that the "remaining claims are *de minimus* unsecured claims, or
14 disputed encumbrances on the Property arising from judgments against
15 Richard Taxe for which neither the Debtor nor the Property are
16 liable."  Id.  Nevertheless, based on the evidence proffered thus
17 far, Debtor's case appears to involve multiple claims and parties
18 (such as Kellspin and Astoria).
19     Based on the foregoing, it appears that the sale is in the best
20 interest of creditors at this time.
21     **B.  11 U.S.C. §§ 363(f)(2) and (4)**
22     The Trustee also seeks to sell the Property free and clear of
23 Morrison Management and Kellspin, Inc.'s disputed liens pursuant to
24 sections 363(f)(2) and (4).  See Mot. at 18-23.  Subsection 363(f)
25 provides that a trustee may sell property "free and clear" of third
26 party interests under certain enumerated conditions.  11 U.S.C. §
27 363(f).
28

### 1.  11 U.S.C. § 363(f)(2)

Subsection 363(f)(2) permits a sale free and clear of an interest if that interest holder consents.  11 U.S.C. ¶ 363(f)(2).  Here, Morrison has filed a Joinder to the Sale Motion, and thus is deemed to have consented to the sale pursuant to § 363(f)(2).  See Docket No. 202.

### 2.  11 U.S.C. § 363(f)(4)

In addition, a trustee may sell estate property free and clear of a nondebtor's interest that is in "bona fide dispute."  11 U.S.C. § 363(f)(4); see also In re Gerwer, 898 F.2d 730, 733 (9th Cir. 1990).  In ruling on a motion to sell estate property free and clear under § 363(f)(4), "a court need not determine the probable outcome of the dispute, but merely whether one exists."  In re Octagon Roofing, 123 B.R. 583, 590 (Bankr. N.D. Ill. 1991).  The parties must provide some factual grounds to show some objective basis for the dispute.  In re Gaylord Grain L.L.C., 306 B.R. 624, 627 (8th Cir. B.A.P. 2004).  To qualify as a bona fide dispute under § 363(f)(4), the disputed lien need not be the subject of an immediate or concurrent adversary proceeding.  Id. (collecting cases).

Here, the Court finds that Kellspin's lien is the subject of a bona fide dispute for purposes of § 363(f)(4).  Kellspin claims to have a valid judgment lien against the Property in the amount of $1.5 million.  As noted above, the Trustee is currently challenging the validity of this lien in a pending adversary proceeding before this Court.  In its Opposition, Kellspin attempts to show that no bona dispute exists by recounting at length the tortuous history of

its lien against the Vestone Way Property.[13]  Yet in doing so, Kellspin undermines its own argument and provides a sufficient objective basis to support a finding that a bona fide dispute exists.[14]  The Court need not decide the ultimate question of the validity of Kellspin's lien here.  It is enough for purposes of § 363(f)(4) that the record shows the objective existence of a bona fide dispute.  Because Kellspin's lien is the subject of a bona fide dispute, the Court will approve the Trustee's proposed sale free and clear of Kellspin's lien.  However, the Court will stay the payment of Astoria's and Kellspin's liens from the proceeds of the sale until the Quiet Title Action resolves the validity and priority of these liens on the Property.[15]

### C.  11 U.S.C. § 363(h)

Five Star has stipulated with the Trustee to forego its interest in the small parcel for $35,000.  The Trustee's motion to approve this compromise is currently pending.  See supra, at p. 6.  Even absent such compromise, however, the Court holds that the

---

[13] In 1984, Kellspin admits that Omni Group, Inc., a Washington corporation ("Omni") obtained a judgment against David and Rose Taxe and others, from which Kellspin's lien arose.  This appears to be the same judgment that was found to be fraudulent by the state appellate court in Ralph Fernandez v. G.J. Siegel & Associates Inc., and Ronald Taxe (Case No. BC045545) (the "Fraud Action"), see JN Req. at Ex. 8, and the basis for the Trustee's argument that Kellspin's lien is disputed.  However, Kellspin contends that the parties settled the case after it was remanded and thus there was no finality to the judgment.  See Kellspin Opp'n at 8.  In support, Kellspin submits a declaration from Herber Papenfuss, attorney for Ralph Fernandez, in support of its argument that the Fraud Action was ultimately dismissed as a result of settlement.  The Court sustains the Trustee's evidentiary objection on the grounds that Mr. Papenfuss never gave his consent to sign the declaration.  See Docket No. 198.  The Court also sustains the Trustee's objection to Ronald Taxe's assertion that Fernandez was obligated to vacate the Judgment as hearsay.  See Docket No. 173.

[14] In his declaration, Kellspin's counsel declares that during the pendency of the Trustee's Sale Motion, several defects were cured:  (1) Kellspin reinstated its corporate charter; (2) the Declaration of Laurason T. Hunt establishes that the Taxes never had control of Omni Group, Inc.; and (3) an order setting aside the judgment in Fernandez v. Taxe was entered on December 11, 2013.  Grantham Decl., ¶ 8, Docket No. 227.  These facts further establish the objective existence of a bona fide dispute regarding the Kellspin lien.  Whether these facts actually resolve the dispute is not before the Court on the Trustee's Sale Motion.  Such a determination is more properly the subject of the pending Quiet Title Action.

[15] "Typically, the proceeds of sale are held subject to the disputed interest and then distributed as dictated by the resolution of the dispute; such procedure preserves all parties' rights by simply transferring interests from property to dollars that represent its value."  Moldo v. Clark (In re Clark), 266 B.R. at 171; In re Dewey Ranch Hockey, LLC, 414 B.R. at 590–91 (citing In re Clark, 266 B.R. 163 (9th Cir. B.A.P. 2001)).

Trustee may sell the Vestone Way Property pursuant to § 363(h), despite Five Star's 50% ownership interest in the small parcel adjacent to the main parcel of the Property.

Subsection 363(h) provides that the trustee may sell both the estate's interest, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if:

> (1) partition in kind of such property is impracticable;
> (2) the sale of the estate's interest in such property would realize significantly less for the estate than sale of such property free of the interests of co-owners;
> (3) the benefit to the estate of such sale outweighs the detriment, if any, to such co-owners; and
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h)(1)-(4).

The statute also gives the non-debtor co-owner certain protections. That is, the co-owner has the right to purchase the property at the trustee's sale price and the co-owner is entitled to the proceeds of the sale according to his interest. 11 U.S.C. § 363(i); In re Addario, 53 B.R. 335, 338 (Bankr. D. Mass. 1985).

Here, the Trustee satisfies all four requirements of § 363(h). First, partition in kind of the Vestone Way Property is impracticable. Five Star has an interest in only one of the sale parcels, which is small, unimproved, and unimproveable. See Sahakian Decl., ¶ 8. In addition, pursuant to the Covenant and Agreement to Hold Property as One Parcel, recorded on September 26,

1983, neither this parcel nor the improved parcel can be sold separately. See JN Req., at Exh. 6.  Next, selling the estate's interest in this small parcel co-owned with Five Star would realize significantly less for the Estate than the sale of such property free of Five Star's interest.  Because of the restrictive covenant above, the Trustee is barred from selling the estate's 50% interest in the small parcel.[16]  For similar reasons, the benefit to the estate of such sale free of Five Star's interest outweighs the detriment since the parcels cannot be sold separately.  Finally, the small parcel does not appear to be used for electric energy or natural/synthetic gas purposes.

Thus, Five Star's 50% interest in the small parcel does not bar the Trustee's proposed sale of the entirety of the Vestone Way Property.

### D. **11 U.S.C. § 363(m)**

Subsection 363(m) moots most appeals of sale orders.  A sale to a good faith purchaser may not be reversed or modified unless the sale was stayed pending appeal.  11 U.S.C. § 363(m); In re Filtercorp, Inc., 163 F.3d 570, 576 (9th Cir. 1998).  "A good faith purchaser is one who buys in good faith and for value."  In re Ewell, 958 F.2d 276, 281 (9th Cir. 1992) (internal quotations omitted).  "[L]ack of good faith is shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  Id.

---

[16] The Covenant instrument clearly indicates that the restriction "shall run with all of the above described land and shall be binding upon ourselves, and future owners, encumbrancers, their successors, heirs or assignees." See JN Req., at Exh. 6. This language is consistent with California law. See Cal. Civ. Code § 1468. That the Covenant was previously breached when a 50% interest was sold to Five Star does not invalidate the Covenant and permit the Trustee to sell the small parcel.

Here, the Trustee's proposed buyer, John Levin, appears to satisfy this good faith requirement. Mr. Levin has filed a declaration stating that:

- He has no connection or relationship with the Trustee, the Trustee's brokers, or the Trustee's counsel;
- He does not know the Debtor or any of her family members;
- He has no connection or relationship with any creditor in this case;
- He learned about the sale from his broker and by seeing an advertisment of the Property for sale;
- He has not been contacted by anyone involved in the case except through his broker regarding his interest in the Property; and
- No one attempted to influence his bidding and he is ready and willing to pay the agreed-upon sale price upon Court approval.

See Levin Decl., ¶¶ 3-8 (Docket No. 226).

Based on these facts, the Court finds that Mr. Levin is a good faith purchaser under § 363(m).

**E.  Debtor's Homestead Exemption**

Pursuant to Schedule C as amended, the Debtor claimed a homestead exemption in the Vestone Way Property in the amount of $175,000.00 pursuant to California Code of Civil Procedure ("Cal. Code Civ. Pro.") § 704.730. See Docket No. 61. The Trustee did not file an objection to the Debtor's claimed homestead exemption per the Docket, and she did not challenge the Debtor's claimed homestead exemption in the Motion. However, the Trustee requests that this Court impose certain terms and conditions on the distribution of the

Debtor's exempt proceeds without citing to any authority in support thereof. Mot. at 10-12. Such terms and conditions may be impermissible in light of the Supreme Court's recent decision in Law v. Siegel, supra note 10.

The Court, therefore, denies the Trustee's request with respect to the treatment of the Debtor's homestead exemption without prejudice to the Trustee seeking to recover the proceeds pursuant to California Code of Civil Procecure § 704.720(b).[17]

## IV. CONCLUSION

In light of the foregoing, the Court grants in part and denies in part the Trustee's Sale Motion. The Trustee's proposed sale of the Vestone Way Property satisfies the requirements of §§ 363(b)(1), 363(f)(2), 363(f)(4), and 363(h). As such, the Court approves the terms of the sale and overbid procedures. Proceeds of the sale shall be held in escrow pending the resolution of the Quiet Title Action unless this Court orders otherwise following a noticed motion and an opportunity to be heard. The Court further finds that the Trustee's proposed Buyer, John Levin, is a good faith purchaser under § 363(m).

However, the Court denies without prejudice the Trustee's proposed treatment of Debtor's homestead exemption.

---

[17] Under Cal. Code Civ. Pro. § 704.720(b), "[i]f the debtor does not reinvest his[/her] proceeds in a new homestead within six months of receipt, they lose their exempt status." Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193, 1198 (9th Cir. 2012).

- 19 -

The foregoing constitutes the Findings of Fact and Conclusions of Law and based thereon Trustee's counsel is directed to prepare and submit an order consistent with this Memorandum of Decision.

Date: March 17, 2014

Richard M. Neiter
United States Bankruptcy Judge